UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONNA DEPNER,

    Plaintiff,

  v.                                  Case No. 20-CV-401

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

Donna Depner seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

## BACKGROUND

On April 29, 2016, Depner filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning July 31, 2015 (Tr. 13) due to emphysema, back problems, right lung problems, asthma, and sleep apnea (Tr. 309). Depner's applications were denied initially and upon reconsideration. (Tr. 13.) Depner filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on February 14, 2019. (Tr. 38–68.) Depner testified at the hearing, as did Megan Cameron, a vocational expert. (Tr. 38.)

In a written decision issued April 4, 2019, the ALJ found that Depner had the severe impairments of degenerative disc disease of the lumbar spine, left shoulder degenerative joint

disease, chronic obstructive pulmonary disease ("COPD"), depression, and anxiety. (Tr. 15.) The ALJ found that Depner did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 16–18.) The ALJ further found that Depner had the residual functional capacity ("RFC") to perform light work, with the following limitations: she is precluded from climbing ladders, ropes, and scaffolds; she should not work at unprotected heights or around dangerous moving machinery; she can occasionally climb stairs, stoop, crouch, or crawl; she can occasionally reach overhead with the left upper extremity; she should avoid concentrated exposure to extreme heat and cold and to humidity; she should avoid concentrated exposure to fumes, dusts, odors, gases, or similar pulmonary irritants; and she is precluded from driving a vehicle as a job task. (Tr. 18.) The ALJ further limited Depner to work where she is able to understand, remember, and carry out simple or detailed instructions that carry a reasoning development level of no greater than 03; can tolerate occasional changes in the work setting; and can occasionally interact with the public. (*Id.*)

The ALJ found that Depner was capable of performing her past relevant work as a housekeeper. (Tr. 28.) Alternatively, the ALJ found that given Depner's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 29.) As such, the ALJ found that Depner was not disabled from July 31, 2015, through the date of the decision. (Tr. 30.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Depner's request for review. (Tr. 1–6.)

## DISCUSSION

1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

2. *Application to This Case*

Depner raises one alleged error in the ALJ's decision—that the ALJ improperly rejected the opinion of consultative examiner Dr. Thomas Leonard, who examined Depner on September 10, 2015. (Tr. 647–52.) Recall that the ALJ limited Depner to less than a full

range of light work. (Tr. 18.) Dr. Leonard, however, opined limitations that would preclude a finding of light work, instead limiting Depner to sedentary work. Specifically, Dr. Leonard opined that Depner was able to sit for two hours, but after two hours she would need to get out of her chair and move around to prevent stiffness and soreness in the back. (Tr. 651.) He also opined that Depner could stand for one hour, could walk for three to six blocks, could lift 20 pounds for 15% of an 8-hour workday, and could carry 15 pounds. (*Id.*) As Depner correctly argues, if the ALJ had adopted Dr. Leonard's limitations, it would support a finding of sedentary work as light work requires the ability to stand for six out of eight hours per day and lift up to 20 pounds for 33% of the day. (Pl.'s Br. at 11, citing Social Security Ruling 83-10, Docket # 26.)

The distinction between light and sedentary work is significant for Depner because of her standing under the "grids." The grids are a series of tables broken into separate rules "'which classif[y] a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience.'" *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."). Under the grids, an individual like Depner (who is closely approaching advanced age, with less than a high school education, and no transferable job skills), is disabled when limited to sedentary work. *See* grid rules §§ 201.09, 201.10. However, this same individual, when limited to light work, is not disabled under the grids. *See* grid rules §§ 202.10,

202.11. Depner argues that the ALJ should have adopted Dr. Leonard's limitations, thus limiting her to sedentary work and a finding of disabled under the grids. (Pl.'s Br. at 9.)

The ALJ provided a thorough and well-reasoned decision in this case, and her analysis as to Dr. Leonard's opinion is no exception. The ALJ found, and Depner does not dispute, that her alleged lifting, standing, and walking limitations stem primarily from her back impairment. (Tr. 21–22.) In limiting Depner to light work, the ALJ considered Depner's testimony that she was able to stand for ten minutes, sit for thirty minutes, and walk for five minutes or half a block. (Tr. 19.) She found that Depner's testimony was inconsistent with statements made during a May 2017 psychological evaluation, where she reported that she likes to go for a walk outside and clean her house (Tr. 20, citing Tr. 944); that the objective medical evidence showed mild degenerative changes in the lower lumbar spine, no more than minimal central canal stenosis at L4-5, no evidence of radiculopathy, and intact cranial nerves, deep tendon reflexes, motor strength, and sensation (Tr. 20); and that Depner showed some improvement in symptoms with physical therapy, steroid injections, and use of a TENS unit (*id.*). The ALJ then painstakingly reviewed Depner's musculoskeletal medical treatment, citing instances of abnormal test results and increases in pain, as well as improvement with treatment. (Tr. 20–21.) The ALJ explained how she was considering Depner's lumbar degenerative disc disease, in combination with her other impairments, in reducing her to light work with restrictions. (Tr. 21.)

The ALJ assigned partial weight to Dr. Leonard's opinion. (Tr. 23.) Specifically, the ALJ rejected the portion of the opinion cited above, regarding Depner's ability to sit, stand, walk, lift, and carry. (*Id.*) In so finding, the ALJ noted that Dr. Leonard's opinion seemed to repeat Depner's self-reported limitations (Tr. 23) and Depner's self-reported limitations were

suspect. For example, Depner initially reported to Dr. Leonard that she could only stand for five minutes and walk 20 feet, that she was in pain all of the time, and that her average intensity of low back pain was 10/10 (Tr. 647–48); however, she later inconsistently stated to Dr. Leonard that she could walk three to six blocks; that her mobility was adequate; that she had no problems with strength in any part of her body; that she did well with her activities of daily living; that she cleaned for four hours every day; that she did laundry, vacuumed, drove, and grocery shopped; that she climbed stairs; and that she occasionally used public transportation (Tr. 648–49).

The ALJ also found Dr. Leonard's medical opinion inconsistent with his own physical examination findings. Specifically, upon physical examination, Dr. Leonard found that Depner's spinal range of motion was normal except that extension of the thoracic and lumbar spine was slightly reduced to 15 degrees and right and left lateral flexion of the thoracic and lumbar spine were slightly limited. (Tr. 23, citing Tr. 649.) Dr. Leonard noted that palpation of the lumbar and thoracic spine was unremarkable; that her upper and lower extremity examination was normal; that Depner had a "very mild limp" favoring the left lower extremity, while her station (both standing and sitting) was unremarkable; Depner could climb and descend two flights of stairs; had normal straight leg raising in the sitting and supine position; had decreased sensation to light touch in the left leg, but not in the left foot; her reflexes were slightly reduced; and her muscle strength was unremarkable. (Tr. 23, citing Tr. 649–50.) Dr. Leonard further noted that Depner could arise from a chair; get on and off the exam table without a problem; could easily walk on her heels or toes; could tandem walk; had good overhead reaching; and he did not observe her need to change position or posture during the exam. (Tr. 23, citing Tr. 650.) As such, the ALJ concluded, given Dr. Leonard's

own examination findings, the fact that he relied on Depner's suspect self-reported limitations, and the inconsistency of his opinion with the record as a whole, that the portion of the opinion regarding Depner's ability to sit, stand, walk, lift, and carry was rejected. (Tr. 23.)

The ALJ's conclusion is well supported by the record. Depner presents, without much elaboration or support, four reasons why the ALJ allegedly erred in this finding. First, she argues that the ALJ was wrong in relying on the inconsistencies between Dr. Leonard's opinion and his physical examination of Depner in discounting the opinion because Dr. Leonard was not simply relying on his own observations in rendering his opinion, but also relied on two examinations with treating physicians from July 2015 and an x-ray of the lumbar spine from January 2015 showing mild degenerative changes. (Pl.'s Br. at 12.) Depner does not elaborate, however, as to how these records support Dr. Leonard's opinion, nor does a review of these records support Depner's argument. (*See* Tr. 546, 766.)

Second, Depner argues that the ALJ impermissibly "played doctor" when stating that the record showed mild to normal findings. (Pl.'s Br. at 12–13.) This is not, however, what the ALJ did when recounting Depner's normal to mild objective findings. (Tr. 23.) The ALJ simply repeated the medical provider's stated objective findings of normalcy. For example, Dr. Leonard stated that "range of motion of the thoracic and lumbar spine [are] normal," except for the "slightly reduced" extension and the "slight limited" left lateral flexion. (Tr. 649.) The ALJ repeats this language when stating that Depner had "mild to normal findings on objective exam." (Tr. 23.) No interpretation was needed. The ALJ was entitled to credit the doctor's own "normal" examination findings.

7

Third, Depner argues that because the ALJ stated that "[g]iven the many normal objective findings, some of the limitations <u>appear</u> a repetition of the claimant's self-reports . . . ." (Tr. 23) (emphasis added), that the ALJ was rejecting Dr. Leonard's opinion as vague and erred in failing to seek further clarification from the doctor. (Pl.'s Br. at 13–14, Pl.'s Reply Br. at 7, Docket # 31.) I do not find that the ALJ's use of the word "appear" suggests that she was rejecting the opinion as vague. The ALJ clearly explained why she concluded that Dr. Leonard was relying on Depner's self-reported limitations, stating as an example that Dr. Leonard's limitation of walking no more than three to six blocks "exactly matches" one of Depner's self-reports. (Tr. 23.) The ALJ also pointed out that Dr. Leonard opined that Depner would need to move around after sitting for two hours, noting that this limitation appeared to be based on Depner's self-reports. (*Id.*) The ALJ's assumption appears correct, as Dr. Leonard specifically noted that he did not observe Depner needing to make any changes in position or posture during the course of the examination, which lasted nearly an hour. (Tr. 650–51.) Given the fact the ALJ did not reject Dr. Leonard's opinion due to vagueness, it is unclear why she would need to recontact him for clarification.

Finally, Depner argues that the ALJ improperly credited the State Agency physicians' opinions over the opinion of Dr. Leonard, who actually examined Depner. Specifically, the ALJ assigned great weight to the portion of the State Agency physicians' opinions limiting Depner to light exertional work. (Tr. 24, 109–10, 148–49.) While Depner is correct that generally more weight is given to the medical opinion of an examining source over the medical opinion of a non-examining source, *see* 20 C.F.R. § 404.1527(c)(1), the examining relationship is merely one factor among many an ALJ must consider in weighing the medical evidence. The ALJ was not required to give Dr. Leonard's opinion more weight simply

8

because he examined Depner. (*See* Pl.'s Br. at 15 (arguing that "as an examining source [Dr. Leonard] was entitled to more weight . . . ").) Far from having a longitudinal picture of Depner's impairments, Dr. Leonard examined Depner once, and as the ALJ discussed in detail, Dr. Leonard's opinion was inconsistent with the record as a whole and was unsupported by the medical evidence. The ALJ specifically addressed the fact that she considered the arguments for a sedentary exertional level RFC, but determined the arguments were unsupported by the record. (Tr. 24.) Depner has not shown that the ALJ erred in assigning greater weight to the State Agency physicians' opinions over that of Dr. Leonard.

Although Depner asserts multiple errors within the ALJ's rejection of Dr. Leonard's opinion limiting her to sedentary work, her arguments are unsupported by the record. For all of these reasons, the Commissioner's decision is affirmed.

## CONCLUSION

Depner alleges the ALJ erred in her evaluation of Dr. Leonard's medical opinion. I find that the ALJ did not err and that the decision is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of August, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge